UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE CANON INKJET
PRINTER LITIGATION

CASE NO.:  2:14-CV-03235
(LDW)(SIL)

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
COUNSEL'S UNOPPOSED MOTION FOR AN AWARD OF
ATTORNEY'S FEES, REIMBURSEMENT OF LITIGATION EXPENSES
AND PLAINTIFFS SERVICE AWARDS

DATED:  November 10, 2015

Respectfully Submitted,

**FEDERMAN & SHERWOOD**
William B. Federman
10205 N. Pennsylvania Avenue
Oklahoma City, OK  73120
Telephone:  (405) 235-1560
Facsimile:  (405) 239-2112
wbf@federmanlaw.com
- and -
2626 Maple Avenue, Suite 200
Dallas, TX  75201

**CHIMICLES & TIKELLIS LLP**
Benjamin F. Johns
Joseph B. Kenney
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone:  (610) 642-8500
Facsimile: (610) 649-3633
bfj@chimicles.com
jbk@chimicles.com

*Co-Lead Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ..................................................................1

II.   ARGUMENT ..........................................................................................5

      A.   Plaintiffs' Counsel Obtained Significant
           Benefits for the Settlement Class.................................................5

      B.   An Award of Reasonable Attorney's Fees
           and Expenses Is Appropriate Here ...............................................6

      C.   The Terms Negotiated in the Settlement Agreement
           Comport with the Standard.........................................................7

      D.   The Attorney's Fees and Expenses Are Justified by the Relevant Factors ...8

           (a)   The "Risk of Litigation" Was Substantial.............................8

           (b)   Plaintiffs' Counsel Have a High Standing in the Bar .......................11

           (c)   Plaintiff's Counsel's Dedicated
                 Significant Time and Labor to this Action...........................11

           (d)   This Litigation was Extremely Complex,
                 Requiring Significant Efforts ...............................................12

           (e)   The Litigation Has Bestowed Substantial Benefits on the Class ......12

      E.   The Fees Requested Are Reasonable
           and Appropriate under Both Approaches .....................................14

           (i)   A 28.46 Percent of Gross Settlement Benefit
                 Is Well Within the Range of Reasonableness .....................................16

           (ii)  The Lodestar Sought is Well
                 within the Range of Reasonableness...................................17

           (iii). the Resulting Multiplier is Negative to Plaintiffs' Counsel .............19

F.    Plaintiffs' Request for Reimbursement of
      Expenses Should be Granted...................................................................19

G.    The Incentive Award is Reasonable and
      Should be Approved by this Court ...........................................................20

III.  CONCLUSION ...................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*In re "Agent Orange" Prod. Liability Litigation*,
  818 F.2d 226 (2d Cir. 1987) ...................................................................................15, 25

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ......................................................................................15

*Becher v. Long Island Light Co.*,
  64 F. Supp. 2d 174 (E.D. N.Y. 1999) ...........................................................................22

*Bellifemine v. Sanofi-Aventis*,
  No. 07 Civ. 2207(JGK), 2010 WL 3119374 (S.D. N.Y. Aug. 6, 2010) ..........................11

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d (S.D. N.Y. 2003) ................................................................................22

*Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-*
  *Medco Managed Care, LLC*,
  504 F.3d 229 (2d Cir. 2007) .................................................................................11, 19

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................................ *passim*

*Denney v. Jenkens & Gilchrist*,
  230 F.R.D. 317 (S.D. N.Y. 2005) ..................................................................................25

*Dornberger v. Metropolitan Life Ins. Co.*,
  203 F.R.D. 118 (S.D. N.Y. 2001) ..................................................................................25

*Eisenstadt v. Centel Corp.*,
  113 F.3d 738 (7th Cir. 1997) ........................................................................................15

*Jones v. Dominion Res. Servs.*,
  601 F. Supp. 2d 756 (S.D. W. Va. 2009) ......................................................................18

*Levitt v. Southwest Airlines Co. (In re Southwest Airlines Voucher Litig.)*,
  799 F.3d 701 (7th Cir. 2015) ........................................................................................20

*Maley v. Del Global Technologies Corp.*,
  186 F. Supp. 2d 358 (S.S. N.Y. 2002) ..........................................................................22

*In re Marsh ERISA Litigation*,
  265 F.R.D. 128 (S.D. N.Y. 2010) .......................................................................19, 21, 24

*Masters v. Wilhelmina Model Agency, Inc.,*
    473 F. 3d 423 (2d Cir. 2007) ...................................................................................21

*Maywalt v. Parker & Parsley Petroleum,*
    963 F. Supp. 310 (S.D.N.Y. 1997) ...........................................................................21

*In re Northern Telecom, Ltd. Securities Litigation,*
    116 F. Supp. 2d 446 (S.D.N.Y. 2000) .......................................................................15

*In re Painewebber Limited Partnerships Litigation,*
    999 F. Supp. 719, 724-25 S.D. ...............................................................................15

*In re Philips/Magnavox TV Litig.,*
    No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287 (D.N.J. May 14, 2012)......................20

*In re Priceline.com, Inc. Securities Litigation,*
    No. 3:00-CV-1884, 2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007).....................21

*Reinhart v. Lucent Techs., Inc. (In re Lucent Techs., Inc. Sec. Litig.),*
    327 F. Supp. 2d 426 (D.N.J. 2004) ..........................................................................18

*Robbins v. Koger Properties, Inc.,*
    116 F.3d 1441 (11th Cir. 1997) ..............................................................................15

*In re Telik, Inc. Securities Litigation,*
    576 F. Supp. 2d 570 (S.D. N.Y. 2008).................................................................19, 20

*Tomassini v. FCA U.S. LLC,*
    No. 3:14–cv–1226, 2015 WL 3868343 (N.D. N.Y. June 23, 2015.) ...................................16

*Varacallo v. Mass. Mut. Life Ins. Co.,*
    226 F.R.D. 207 (D.N.J. 2005) ................................................................................18

*In re Warner Communications Sec. Litigation,*
    618 F. Supp. 735 (S.D. N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ............................15

Co-Lead Counsel for Plaintiffs, Federman & Sherwood and Chimicles & Tikellis LLP (hereinafter, collectively, "Plaintiffs' Counsel"), respectfully submit this memorandum of law in support of their motion for an award of $370,000.00 for attorney's fees and litigation expenses reasonably and necessarily incurred in prosecuting and resolving the above-entitled and captioned action (the "Action"). Plaintiffs also request that an Incentive Awards of $250.00 be paid to each of the class representative Plaintiffs (namely, Sarah Barrett, Marcus Ho, and Melanie Clark). As set forth in sections 8(A) and (C) of the Settlement Agreement, Defendant Canon U.S.A., Inc. ("Canon") has agreed not to oppose these requests.

## II.    PRELIMINARY STATEMENT

The procedural history of this case is set forth in Plaintiffs' Memorandum of Law in Support of their Motion for Preliminary Approval of the Settlement, and is repeated herein only insofar as relevant to the instant motion. This class action lawsuit was initially commenced on May 23, 2014, when the original complaint was filed by Plaintiff Sarah Barrett. [Doc. 1]. The case was filed after an extensive pre-suit investigation by Plaintiffs' Counsel. This investigation included interviews with putative class members, reviewing their documentary material, researching publicly available information about the alleged defects in the Canon printers and print heads, identifying and interviewing expert witnesses, and inspecting certain of the affected printers along with the assistance of a retained expert. Plaintiffs' Counsel retained an expert in copier design and function to assist in developing the factual and legal theories stated in the complaint, assist with

1

discovery and document review, as well as to help Plaintiffs' Counsel better understand the alleged defect.

Thereafter, the operative Consolidated Class Action Complaint (the "Complaint") was filed on September 15, 2014. [Doc. 22]. It was filed on behalf of three named Plaintiffs -- Sarah Barrett, Marcus Ho, and Melanie Clark -- who are among the thousands of purchasers of the allegedly defective printers.[1] The Complaint alleges that the Printers contained an undisclosed defect that manifests itself by displaying the "U052" coded error message – "The type of print head is incorrect.  Install the correct print head." [Complaint at ¶¶ 1, 10-11]. According to the Complaint, when this error message appears, the subject Printers abruptly stop working, and all printing functions are disabled.  *Id.* The Complaint alleges that the Printers fail long before the end of their typical useful lives. The Complaint included numerous and descriptive consumer concerns about the alleged defect. [Complaint at ¶ 25].  In the Complaint, Plaintiffs assert that Canon had actual knowledge of the defect in the Printers, but failed to disclose said defect to consumers. [Complaint at ¶¶ 13-15].  Plaintiffs brought the Complaint on behalf of a nationwide class of purchasers of the Printers, and/or subclasses of purchasers in the States of New York, California and Virginia. [Complaint at ¶ 26].  Plaintiffs asserted

---

[1] The printers covered by the Settlement include the following Canon-brand PIXMA inkjet printer models: iP3600, iP4700, iP4820, iP4920, iX6520, iX7000, MG5120, MG5220, MG5320, MG6120, MG6220, MG8120, MG8220, MP500, MP530, MP560, MP600, MP610, MP620, MP640, MP730, MP800, MP960, MP970, MP990, MX700, MX712, MX850, MX860, MX870, MX882, MX892, MX7600, PRO9000MKII and PRO9500MKII, including all models that are derivatives of the models identified above and which are signified by a suffix following the model numbers set forth above ("Printers").

2

causes of action for breach of express warranty, breach of the implied warranty of merchantability, and unjust enrichment, as well as for violations of the consumer protection laws of the subclass States. [Complaint at ¶¶ 34-86].

On August 14, 2014, and at Canon's invitation, counsel for the parties and representatives of Canon participated in a lengthy in-person meet and confer about the direction of the case and necessary discovery. During these discussions, the parties explored the background of the litigation, the various consumer complaints, and the possible early resolution of the case. Since that meeting, the parties have engaged in extensive settlement discussions as well as production of documents. As part of these negotiations, Plaintiffs requested and Canon voluntarily produced voluminous and comprehensive data regarding the Printers and the allegations in the Complaint. Plaintiffs' Counsel, with the assistance of an expert, then reviewed and analyzed the data produced by Canon. Plaintiffs' Counsel also conducted an in-person interview of a Canon witness to discuss this information, and to confirm that the proposed settlement terms were fair, reasonable and adequate. Significantly, the Settlement[2] was only executed by the parties after Plaintiffs' Counsel had conducted an in-person confirmatory interview of one of Canon's representatives to confirm that its terms were fair, reasonable and adequate for the Settlement Class.

---

[2] Unless otherwise defined herein, capitalized terms used in this Memorandum are defined in the Settlement Agreement attached as Exhibit 1 to Declaration of William Federman attached to Plaintiffs' Memorandum of Law in Support of Their Unopposed Motion for Preliminary Approval of the Class Action Settlement [Docs. 33 and 34].

While Canon has denied that any of its printers suffer from any defect, it has agreed, with respect to the Printers, to extend the warranty period with respect to Print Head Issues – defined in the Settlement Agreement as issues involving the print head installed in a Printer and/or related to a U052 error message displayed by a Printer–by nine (9) months from the date the original one-year warranty would have expired. In addition, Canon has agreed to reimburse eligible and participating Settlement Class Members with their choice of either (a) a cash payment of up to $50.00, or (b) a voucher valued at up to $75.00 at the online Canon store. This ensures that eligible and participating Settlement Class Members who actually experienced a Print Head Issue will be fairly compensated.  Additionally, the Settlement provides for a cash settlement fund of up to $930,000 (the "Settlement Fund").  In the event that the Settlement Fund is not sufficient to pay all claims, the cash payments and the vouchers shall be disbursed to Settlement Class Members on a pro rata basis.

Moreover, following conclusion of negotiations on the operative terms of the Settlement the parties negotiated, at arm's length, the issue of Plaintiffs' Counsel's attorney's fees, expenses and the service awards to Plaintiffs. Canon has agreed not to oppose Plaintiffs' Counsel's application for attorney's fees and expenses in an amount of not more than $370,000.00 (the "Agreed Amount"). Canon also agrees not to oppose incentive awards for each of the three named Plaintiffs in an amount of no more than $250.00 per Plaintiff.  In light of all the risks in this case, Plaintiffs' Counsel submit that the $930,000 Settlement Fund as well as the structure of the settlement (cash and vouchers) provides Plaintiffs and Class Members with significant relief – particularly in

4

light of the significant legal and factual risks they faced in prosecuting this case. Many of the subject models of Canon printers at issue in this Action are out of warranty and the Printers are largely relatively inexpensive Canon printers designed for personal, non-commercial use. Thus, the $50.00 cash payment or the alternate $75.00 voucher, in many cases will be a substantial portion of the given Settlement Class Member's actual cost of the printer. In sum, the claims are of the variety which would be uneconomical to bring on an individual basis; thus, but for this class action, most Class Members would never have been compensated for their Printer's error code problems.

For all the reasons set forth herein, Plaintiffs' Counsel respectfully submit that the requested fees and expenses, as well as the Incentive Awards to the class representatives, are more than justified in light of the substantial commitment of effort and resources, as well as the results achieved in this Action.

## II.  ARGUMENT

### A.    Plaintiffs' Counsel Obtained Significant Benefits for the Settlement Class

As detailed more fully in the preceding Preliminary Statement of this Memorandum and in Plaintiffs' Motion for Preliminary Approval, Plaintiffs' counsel have  made significant benefits available to Plaintiffs and the Settlement Class. Pursuant to the Settlement, each member of the Settlement Class who timely submits a valid claim form will receive nine (9) months of added Printer warranty length from the date the original one-year warranty would have expired; plus, each participating Settlement Class Member will receive their choice of either (a) a cash payment of up to $50.00, or (b) a

voucher valued at up to $75.00 at the online Canon store.  The Settlement Fund ensures that eligible and participating Settlement Class Members who actually experienced a Print Head Issue will be fairly compensated.   In total, members of the Settlement Class are entitled to receive up to $930,000.00 in aggregate relief under the Settlement.

### B.   An Award of Reasonable Attorney's Fees and Expenses Is Appropriate Here.

Federal courts have long recognized that a lawyer whose efforts create a common fund may recover a reasonable fee from the fund as a whole.  See *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 249 (2d Cir. 2007) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("under the 'equitable fund' doctrine, attorneys for the successful party may petition for a portion of the fund as compensation for their efforts").  Moreover, it is well-established that "[a]n agreed upon award of attorney's fees and expenses is proper in a class action settlement, so long as the amount of the fee is reasonable under the circumstances." *Bellifemine v. Sanofi-Aventis,* No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *5 (S.D. N.Y. Aug. 6, 2010).  To decide an appropriate amount of attorney's fees in class actions, courts have adopted the principles articulated by the Second Circuit in *Grinnell*:

> We are not under the illusion that a "just and adequate fee" can necessarily be ascertained by merely multiplying attorney's hours and typical hourly fees... [L]ess objective factors can be introduced into the calculus.  Perhaps the foremost of these factors is the attorney's "risk of litigation" i.e. the fact that despite the most vigorous and competent of efforts success is never guaranteed.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974).

6

Other generally accepted factors as stated in *Grinnell* include: (1) the standing of counsel at the bar - both counsel receiving the award and opposing counsel; (2) time and labor spent; (3) magnitude and complexity of the litigation; (4) responsibility undertaken; (5) the amount recovered; and (6) what it would be reasonable for counsel to charge a victorious plaintiff. *Id*. at 470. These factors are discussed below.

### C.    The Terms Negotiated in the Settlement Agreement Comport with the Standard.

The Settlement Agreement provides that, subject to Court approval, Plaintiffs' Counsel will receive up to $370,000.00 in attorney's fees and expenses - which equals 28.46 percent[3] of the $1.3 million total maximum gross value of the settlement, including the attorney's fee and expense provision. Without the fee and expenses included, the request is less than 40 percent. Plaintiffs now apply for those attorney's fees and expenses. Given the results of the Settlement, the time-consuming and diligent efforts of Plaintiffs' Counsel to effectuate it, and Plaintiffs' Counsel's continuing supervision responsibilities, the Court should grant Plaintiffs' application for these attorney's fees and expenses.

When using the "percentage of the fund" approach for evaluating class action attorney's fees, the amount of attorney's fees in question is compared to the overall settlement value, including any portion earmarked for said fees. Here, the Agreed Amount established as a cap on attorney's fees and expenses of approximately 28.46 percent of the total relief available through the Settlement. As is described herein, the

---

[3] This percentage is inclusive of attorney's fees <u>and expenses</u> as the Settlement made with Canon did not bifurcate the Agreed Amount as between attorney's fees and expenses.

7

award of fees here will be just over 25% of the Settlement, which is within the Second Circuit's range of reasonableness. See *Goldberger*, 209 F.3d at 51–52.   Moreover, the attorney's fees are separate and apart from the settlement payments to class members; i.e., the award of fees and costs will not reduce the recovery of the class. As shown below, the present request is fair and reasonable and should be approved under either of the aforementioned two methods used in the Second Circuit for evaluating class counsel fees.

Under the alternative "lodestar" measure, Plaintiffs' Counsel collectively have expended 1,221.80 hours in attorney's time as of October 31, 2015, and expect to devote further, substantial hours overseeing the Settlement. This amounts to $544,326.25 in billable time.  In addition to Co-Lead Counsel, these figures include the billable time and expenses spent on the case by liaison counsel, Harwood Feffer LLP. All three firms have submitted herewith declarations detailing their contributions to the case. In sum, on a lodestar comparison, Plaintiffs' Counsel here will experience a "negative" lodestar of 0.68, meaning the fees being requested are significantly less than the time actually spent prosecuting the action.

**D.     The Attorney's Fees and Expenses Are Justified by the Relevant Factors.**

**(a)     The "Risk of Litigation" Was Substantial.**

The most significant factor in determining the reasonableness of attorney's fees, the risk of litigation, weighs heavily in favor of an award of fees in this case.  Success for the Class here was never guaranteed.  Canon's legal defenses are set forth in its October 6, 2014 letter requesting a pre-motion conference, wherein it described its anticipated motions to dismiss and to strike the class allegations from the complaint. *See* Docket Entry

8

No. 23. The Second Circuit has identified the "risk of success as 'perhaps the foremost' factor to be considered in determining [a reasonable award of attorneys' fees]." *Goldberger*, 209 F.3d at 54. From the commencement of this litigation almost a year and a half ago, Plaintiffs' Counsel have been paid nothing for their substantial and successful efforts because of the contingent nature of their fee.  Plaintiffs' Counsel have made a significant outlay of cash and personnel resources, which has been completely at risk. Payment for Plaintiffs' Counsel's services has, since inception, been wholly dependent on obtaining a fair and reasonable recovery for the Class. There was a significant possibility that Plaintiffs' Counsel would recover nothing for their substantial efforts.

Unlike the litigation in *Goldberger*, which was preceded by a lengthy government investigation that resulted in guilty pleas to charges of securities fraud, in this case Plaintiffs' Counsel pursued claims without the assistance of any government investigation or findings. Canon denied, and continues to deny, any liability.  Thus, Plaintiffs' Counsel expended substantial effort, time, and monetary resources to achieve the proposed Settlement.  Moreover, the Courts of this Circuit have expressly recognized that the contingent nature of counsel's fee, with the built-in risk of litigation, is a highly relevant factor in determining the fee to be awarded. As the court in *Grinnell* stated:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Grinnell*, 495 F.2d at 470.[4]

Courts have also recognized that the risk of non-payment in complex cases, such as here, is very real and is heightened when counsel press to achieve the very best result for those that they represent.  See *In re Painewebber Limited Partnerships Litigation*, 999 F. Supp. 719, 724-25 (S.D. N.Y. 1998). There are numerous class actions in which plaintiff's counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.  *See, e.g., In re Northern Telecom, Ltd. Securities Litigation*, 116 F. Supp. 2d 446 (S.D.N.Y. 2000) (summary judgment granted after seven years of litigation); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation ground and judgment entered for defendant); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (affirmed the lower court's granting of summary judgment in favor of defendants); and *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion). Further consideration should be given to the fact that the printers at issue had been in use for several years, and many were out of warranty at the time this action was filed, and at the time the settlement was reached. *Tomassini v. FCA U.S. LLC*, No. 3:14–cv–1226 (MAD/DEP), 2015 WL 3868343, at *10 (N.D.

---

[4] See also *In re "Agent Orange" Prod. Liability Litigation*, 818 F.2d 226, 236 (2d Cir. 1987); *In re Warner Communications Sec. Litigation*, 618 F. Supp. 735, 747 (S.D. N.Y. 1985) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award.") (Internal citations omitted), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

N.Y. June 23, 2015) (consumer could not conceivably think a claim based upon an expired warranty was actionable) (Internal citation omitted).

Taking into account the significant litigation and contingency risks in this case, an award by the Court of attorney's fees in the amount requested by Plaintiffs' Counsel is fully justified.

**(b)    Plaintiffs' Counsel Have a High Standing in the Bar.**

As set forth in the accompanying declarations and firm resumes, co-lead counsel for Plaintiffs, William B. Federman of Federman & Sherwood and Benjamin F. Johns of Chimicles & Tikellis are well regarded by their peers.  Each of their respective firms is nationally recognized for excellence in complex actions including complex class actions, with a reputation for zealous representation of its clients.  And, as set forth above, both of their firms have worked cooperatively in the successful prosecution of this case.

**(c)    Plaintiff's Counsel's Dedicated
Significant Time and Labor to this Action.**

Plaintiffs' Counsel collectively devoted 1,221.80 hours from 28 attorneys and staff members to the successful settlement of this matter. That time, effort and dedication of resources brought this complex litigation to an unmitigated, successful resolution. The work involved investigating both the legal and factual allegations of the alleged Printer malfunctions involving certain designated Canon Printers,[5] drafting of pleadings and other court papers, working with an industry expert to understand the full nature of the alleged Printer malfunctions, obtaining, conducting and interpreting document

---

[5] See Note 1, *supra.*

discovery from Canon, participating in lengthy settlement talks with Canon officials and counsel, and, ultimately, negotiating and then drafting of the Settlement Agreement. Furthermore, as noted above, significant additional post-settlement work remains to be done.

### (d) This Litigation was Extremely Complex, Requiring Significant Efforts.

The prosecution of this action required a high level of experience and expertise in complex class action litigation, as well as the ability to provide such service under challenging circumstances.  While the full extent and nature of the efforts of Plaintiffs' Counsel are described in detail in the Declarations of Messrs. Federman, Johns, and Overs attached hereto show that Plaintiffs' Counsel has litigated this action vigorously and such counsel will continue to take their obligations seriously in the post-settlement stage.

### (e) The Litigation Has Bestowed Substantial Benefits on the Class.

As discussed more fully above, the benefits of the Settlement to Plaintiffs and the Class are substantial. The Settlement provides up to $930,000.00 in relief for the direct betterment of the Settlement Class and $1.3 million in overall relief.  The Settlement Fund provides each member of the Settlement Class who timely submits a valid claim form nine (9) months of added Printer warranty length from the date the original one-year warranty would have expired.  In addition, each participating Settlement Class Member will receive their choice of either (a) a cash payment of up to $50.00, or (b) a voucher

valued at up to $75.00 at the online Canon store.[6]  The relief Plaintiffs' Counsel have obtained required great effort over an almost eighteen (18) month time period, during which time Plaintiffs' Counsel successful negotiated an effective settlement with an adversary that consistently denied the plaintiffs' claims and any liability. The Settlement will, in many cases, make Settlement Class Members "whole" or nearly so.  For these reasons, this Settlement is an impressive achievement.

The response by Class Members to date also justifies the requested fees and expenses. The deadline by which class members may object to the Settlement – including Plaintiffs' request for attorneys' fees – is November 24, 2015.  While this fee petition is being filed *before* the expiration of the objection period, as of the date of this filing there have been only six (6) objections received. Setting aside the fact that most of them do not comply with the requirements set forth in section (6)(I) of the Settlement Agreement – and should be rejected for this reason alone – this small number of objections supports the requested fee. *See Reinhart v. Lucent Techs., Inc. (In re Lucent Techs., Inc. Sec. Litig.)*, 327 F. Supp. 2d 426, 435 (D.N.J. 2004) ("[T]he Court concludes that the lack of a significant number of objections is strong evidence that the fees request is reasonable."); *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 763 (S.D. W. Va. 2009) ("The high success of the class notification in this case, coupled with the extremely low number of objections, support the reasonableness of the requested fee."); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226

---

[6] To date, approximately 90% of claimants have opted for the cash option. The parties will provide more information about these claims when Plaintiffs move for final approval of the settlement.

F.R.D. 207, 251 (D.N.J. 2005) ("…the Court received fewer than fifty objections to the requested attorneys' fees out of the more than three million Class Members. Such a small number of objections in relation to the size of the Class favors approval of the request."). Substantively, only one of these objections (from a Mr. Geary Mizuno) vaguely states that "this litigation was undertaken solely to enrichen the pockets of the attorneys representing the class." This statement is unpersuasive because does not directly address reasonableness of the requested fee under the circumstances, nor consider the *Grinnell* factors. Plaintiffs reserve the right to address any additional objections that may be filed.

### E.    The Fees Requested Are Reasonable and Appropriate under Both Approaches.

The Second Circuit has authorized district courts, in the exercise of their informed discretion, to calculate class action counsel fees either on a "percentage of the fund" basis or by fashioning a "lodestar" when awarding fees in a common fund case. *See Central States*, 504 F.3d at 249.  However, as courts have recently recognized, "the district court has discretion to use either method, although the trend in this Circuit is toward the percentage method."  *In re Marsh ERISA Litigation*, 265 F.R.D. 128, 146 (S.D. N.Y. 2010). *See also Wal-Mart Stores*, 396 F.3d at 121 ("The trend... toward the percentage method... directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").  Indeed, district courts endorsed this shift two years earlier in *In re Telik*, noting "the administrative problems associated with the lodestar method, and the advantages presented by the percentage of recovery approach," which "led most district courts in this Circuit to adopt the

percentage of recovery methodology." *In re Telik, Inc. Securities Litigation*, 576 F. Supp. 2d 570, 586 (S.D. N.Y. 2008).

Courts have stated that the lodestar method is "preferable where 'the nature of the settlement evades the precise evaluation needed for the percentage of recovery method.'" *In re Philips/Magnavox TV Litig.*, No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287, at *43 (D.N.J. May 14, 2012) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)). In *In re Philips/Magnavox TV Litig.*, for example, the district court found that the lodestar method was the appropriate method to use in a settlement that involved a combination of cash awards and vouchers. *See id.* at *44. With respect to vouchers, the Seventh Circuit has recently held that the Class Action Fairness Act "allows a district court discretion to use the lodestar method to calculate attorney fees even when those fees are intended to compensate class counsel for the coupon relief he or she obtained for the class." *Levitt v. Southwest Airlines Co. (In re Southwest Airlines Voucher Litig.)*, 799 F.3d 701, 707 (7th Cir. 2015) (citing 28 U.S.C. § 1712).

The percentage method calculates the fee award as some percentage of the settlement fund created for the class. *Id.* The lodestar method multiplies the number of hours each attorney has expended by the hourly rate attorneys of similar skill charge in the area; then it applies to that figure a multiplier which factors in the litigation risks and other considerations. *Id.* (citing *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999)). In combination, the documentation of hours submitted by counsel can be used as a "cross check" on the reasonableness of the requested percentage of the fund. *Goldberger*, 209 F.3d at 55.

15

At bottom, under either a "percentage-of-the-fund" analysis or a "lodestar" approach, Plaintiffs' Counsel's fee request is reasonable and should be approved.

### (i)     A 28.46 Percent of Gross Settlement Benefit Is Well Within the Range of Reasonableness.

As noted above, the Second Circuit favors awarding fees according to the "percentage-of-the-fund" over the "lodestar" method in common fund cases.  Moreover, this Circuit has ruled that "[a]n allocation of fees by percentage should therefore be awarded on the basis of total funds made available whether claimed or not."  *Masters v. Wilhelmina Model Agency, Inc.*, 473 F. 3d 423, 437 (2d Cir. 2007) (emphasis added).  Federal courts have established that approximately 20-50 percent is a standard fee in complex class action cases like this one, where plaintiff's counsel has achieved a good recovery for the class.  See, e.g., *Maywalt v. Parker & Parsley Petroleum*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997); and *In re Marsh ERISA Litigation*, 265 F.R.D. at 149 (noting trend of awarding 20-50 percent of recovery to attorneys and finding fee of over $11 million, or one-third of the recovery, "fair and reasonable in relation to the recovery and compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere.").

Accordingly, district courts in the Second Circuit routinely award attorney's fees that are 30 percent or greater.  See, e.g., *In re Priceline.com, Inc. Securities Litigation*, No. 3:00-CV-1884, 2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007) (awarding 30 percent of $80 million fund); *Frank v. Eastman Kodak Co.* 228 F.R.D. 174, 189 (W.D. N.Y. 2005) (awarding attorney's fees of 38.26 percent of $125,000.00 settlement fund); *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D. N.Y. 2002) (approving attorney's

16

fees of 33.3 percent of a $11.5 million settlement fund); *Strougo ex rel. Brazilian Equity Fund,*

*Inc. v. Bassini*, 258 F. Supp. 2d, 254, 262 (S.D. N.Y. 2003) (33.33 percent attorney fee award

in approximately $1.5 million settlement); and *Becher v. Long Island Light Co.*, 64 F. Supp.

2d 174, 182 (E.D. N.Y. 1999) (33.33 percent).

For the reasons explained above, this was clearly a high-risk case whose outcome

was uncertain at the outset.  Accordingly, the fee requested by Plaintiffs' Counsel falls

well within awards in similar class action cases.

**(ii)    The Lodestar Sought is Well**
**within the Range of Reasonableness.**

A comparison with Plaintiffs' Counsel's lodestar further demonstrates that the

requested fee is reasonable and should be approved.  Here, Plaintiffs' Counsels' aggregate

lodestar in connection with this Action is approximately $544,326.75, broken down by

firm as follows:

| | | **HOURS** | **RATE** | **LODESTAR** |
|---|---|---|---|---|
| **Harwood Feffer LLP** | | | | |
| Robert I. Harwood | (P) | 6.50 | $750 | $4,875.00 |
| Peter W. Overs | (C) | 19.10 | $550 | $10,505.00 |
| Craig Lowther | (PL) | 4.20 | $275 | $1,155.00 |
| Glenn Mariano | (PL) | 20.30 | $275 | $5,582.50 |
| | | **50.10** | | **$22,117.50** |
| | | | | |
| **Federman & Sherwood** | | | | |
| William B. Federman | (A) | 180.40 | $850 | $153,340.00 |
| Stuart W. Emmons | (A) | 0.50 | $675 | $337.50 |
| Amy H. Wellington | (A) | 78.60 | $450 | $35,370.00 |
| James P. Woodruff | (A) | 24.25 | $510 | $12,367.50 |
| Gregg J. Lytle | (A) | 21.30 | $450 | $9,585.00 |

| | | | | |
|---|---|---:|---|---:|
| Kyle J. Eckman | (A) | 1.00 | $350 | $350.00 |
| Emily B. Fagan | (A) | 35.50 | $450 | $15,975.00 |
| Robin K. Hester | (PL) | 80.50 | $250 | $20,125.00 |
| K. Lynn Nunn | (PL) | 67.10 | $250 | $16,775.00 |
| Allicia D. Bolton | (PL) | 6.45 | $250 | $1,612.50 |
| Nicole E. Johnson | (PL) | 10.35 | $250 | $2,587.50 |
| | | **505.95** | | **$268,425.00** |
| | | | | |
| **Chimicles & Tikellis LLP** | | | | |
| Chimicles, Nicholas E. | (P) | 0.75 | $950 | $712.50 |
| Sauder, Joseph G. | (P) | 13.50 | $700 | $9,450.00 |
| Schelkopf, Matthew D. | (P) | 3.00 | $600 | $1,800.00 |
| Johns, Benjamin F. | (P) | 302.50 | $550 | $166,375.00 |
| Saler, Christina Donato | (SA) | 1.00 | $500 | $500.00 |
| Kenney, Joseph B. | (A) | 157.25 | $300 | $47,175.00 |
| Mastraghin, Corneliu | (PL) | 2.25 | $250 | $562.50 |
| Royer, Jesse | (PL) | 43.25 | $150 | $6,487.50 |
| Ngo, Phuong | (LA) | 8.50 | $100 | $850.00 |
| Epstein, Blair M. | (FLA) | 34.00 | $60 | $2,040.00 |
| Cain, Shelby R. | (FPL) | 66.00 | $175 | $11,550.00 |
| Kane, Erica E. | (FLC) | 16.25 | $225 | $3,656.25 |
| Orvik, Erik J. | (FLC) | 17.50 | $150 | $2,625.00 |
| | | **665.75** | | **$253,783.75** |
| | | | | |
| **TOTALS** | | **1,221.80** | | **$544,326.25** |

Summary descriptions of the work performed by each attorney and professional staff member, together with summaries of their backgrounds, are provided in the accompanying declarations of each of the firms representing Plaintiffs. *See*, Declaration of Benjamin Johns at ¶¶ 3-7; and Declaration of William B. Federman at ¶¶4-7 and Peter Overs at ¶¶4-5.

Importantly, these lodestar amounts only include time that was specific to the claims against Canon. Moreover, the above lodestar amounts are net amounts that reflect the exercise of billing discretion. Plaintiffs' Counsel has excluded any time that was deemed to be redundant, excessive, or non-essential to this Action. Hence, Plaintiffs'

Counsel's lodestars are reasonable and appropriate in light of the work performed on the case, and would have been much higher but for Plaintiffs' Counsel's extensive experience in class action litigation and the economies of scale that were achieved by combining the synergies of the two firms employed by Plaintiffs.

**(iii).   the Resulting Multiplier is Negative to Plaintiffs' Counsel**

Because of the agreed gross fee for Plaintiffs' Counsel's fees of $370,000.00 and an actual aggregate gross fee of Plaintiffs' Counsel of $544,326.25, any lodestar would necessarily be negative.  Thus, there is no request for the Court to enhance the requested fee with a multiplier.  *See* Part II (C) of this Memorandum, *supra*.

**F.     Plaintiffs' Request for Reimbursement of
         Expenses Should be Granted.**

Plaintiffs' Counsel have collectively expended $15,053.86 to date in expenses. Chief amongst these expenses was the retention and consultation fees for an expert to assist Plaintiffs' Counsel in development of the theory of the case as well as in understanding the alleged defect contained in the Printers.  As courts in this Circuit have recognized, "it is well-established that counsel who create a common fund ... are entitled to the reimbursement of [all reasonable] litigation costs and expenses."  See, *In re Marsh ERISA Litigation*, at *56.  The expenses are more fully explained in the Declarations of Counsel submitted herewith.

**G.     The Incentive Award is Reasonable and
         Should be Approved by this Court.**

Plainly, the Settlement Agreement here, with a gross value of $1.3 million, confers a meaningful and substantial benefit upon the Class Members.  Pursuant to the

19

Settlement Agreement, Canon has agreed to pay an Incentive Award to each of the three class representatives in the amount of $250.00 each.   Canon has agreed to pay this Incentive Award separately, and not out of any common fund. Thus, payment of this Incentive Award will not in any way reduce any of the benefits flowing to the Class Members generally.   Additionally, the requested award is the result of arms-length negotiation, is fair and reasonable. Moreover, each of the representative plaintiffs, Sarah Barrett, Marcus Ho, and Melanie Clark, have performed admirably and diligently in assisting Plaintiffs' Counsel in their understanding of the underlying facts of this Action. In similar circumstances, courts have held that an incentive award may be given to compensate the named plaintiffs for efforts expended "for the benefit of the lawsuit." *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D. N.Y. 2001) (Internal citation omitted).   Similarly, incentive "awards are not uncommon and can serve an important function in promoting class action settlements."   They are routinely awarded by courts when a common fund, as here, has been created for the benefit of the class and where the named plaintiffs actively participated in the litigation.   *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 354-355 (S.D. N.Y. 2005).   Accordingly, Plaintiffs respectfully urge this Court to approve the modest  Award of $250.00 each to be paid by Canon to each of Sarah Barrett, Marcus Ho, and Melanie Clark.

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully requests that this Court grant Plaintiffs' Counsel's unopposed motion for an aggregate award of attorney's fees

and for the reimbursement of litigation expenses totaling $370,000 Plaintiffs also seek

Court approval of the requested Incentive Award of $250.00 each to be paid by Canon to

each of the named Plaintiffs (i.e., Sarah Barrett, Marcus Ho, and Melanie Clark).

DATED:  November 10, 2015                      Respectfully Submitted,

                                               **FEDERMAN & SHERWOOD**

                                               _____
                                               William B. Federman
                                               10205 N. Pennsylvania Avenue
                                               Oklahoma City, OK  73120
                                               Telephone:  (405) 235-1560
                                               Facsimile:  (405) 239-2112
                                               wbf@federmanlaw.com
                                                        - and -
                                               2626 Maple Avenue, Suite 200
                                               Dallas, TX  75201

                                               **CHIMICLES & TIKELLIS LLP**
                                               Benjamin F. Johns
                                               Joseph B. Kenney
                                               One Haverford Centre
                                               361 West Lancaster Avenue
                                               Haverford, PA 19041
                                               Telephone:  (610) 642-8500
                                               Facsimile: (610) 649-3633
                                               bfj@chimicles.com
                                               jbk@chimicles.com

                                               Co-Lead *Counsel for Plaintiffs*

                                                       Peter Overs
                                                       Harwood Feffer LLP
                                                       488 Madison Avenue
                                                       8th Floor, Suite 801
                                                       New York, NY 10022
                                                       (212) 935-7400
                                                       Fax: (212)753-3630
                                                       Email: povers@hfesq.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, William Federman, certify that I caused the foregoing to be electronically filed in this case on November 10, 2015 using the Court's CM/ECF System, thereby serving it upon all counsel of record in this case.

<u>/s/ William B. Federman  </u>
William B. Federman