# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re Canon<br>Inkjet Printer Litigation | Case No.: 2:14-cv-03235-LDW-SIL<br><br><br>**CLASS ACTION** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR UNOPPOSED MOTION FOR FINAL
APPROVAL OF THE CLASS ACTION SETTLEMENT**

Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
Email: BFJ@chimicles.com

William B. Federman
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email: WBF@federmanlaw.com

*Co-Lead Counsel for Plaintiffs*

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    BACKGROUND AND PROCEDURAL HISTORY........................................................1

       A.     Terms of the Settlement Agreement ...................................................................4

       B.     Notification to Settlement Class Members ..........................................................5

       C.     Processing of Claim Forms and Results ..............................................................6

       D.     Release of Claims ...............................................................................................6

III.   ARGUMENT................................................................................................................7

       A.     The Settlement Should Be Finally Approved By the Court ...................................7

              1.     The complexity, expense and likely duration
                     of the litigation supports final approval ....................................................8

              2.     The reaction of the class to the settlement supports final approval ............9

              3.     The stage of the proceedings and the
                     amount of discovery completed supports final approval ..........................12

              4.     The risks of establishing liability support final approval..........................14

              5.     The risks of establishing damages support final approval ........................15

              6.     The risks of maintaining the class action
                     through trial or appeal supports final approval .......................................16

              7.     The ability of defendants to withstand greater judgment..........................16

              8.     The range of reasonableness of the settlement fund in light
                     of the best possible recovery and all the attendant risks
                     of litigation both support final approval of the settlement.......................17

       B.     Final Certification of the Class for
              Purposes of Settlement Only is Appropriate.........................................................19

              1.     Numerosity Under Rule 23(a)(1)............................................................19

              2.     Commonality Under Rule 23(a)(2)..........................................................20

3.      Typicality Under Rule 23(a)(3) ..................................................................21

4.      Adequacy of Representation Under Rule 23(a)(4) ...................................22

5.      The Requirements of Rule 23(b)(3) Are Met ...........................................23

IV.    CONCLUSION...................................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................23

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)..............................................................15

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ............................................................................23

*In re AOL Time Warner, Inc. Securities & ERISA Litigation*,
   No. MDL 1500, 02 Civ. 5575(SWK),
   2006 WL 903236 (S.D.N.Y. April 6, 2006) ...............................................11, 16

*Augustin v. Jablonsky*,
   461 F.3d 219 (2d Cir. 2006)...............................................................................25

*Bodon v. Domino's Pizza, LLC*,
   No. 09-CV-2941, 2014 WL 3605507 (E.D.N.Y. June 25, 2014) .........................20

*Charron v. Pinnacle Grp. NY LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012)............................................................10, 11

*Chavarria v. N.Y. Airport Serv., LLC*,
   875 F. Supp.2d 164 (E.D.N.Y. 2012) .................................................................9

*Clark v. Ecolab Inc.*,
   No. 07 Civ. 8623 (PAC), 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ...............18

*Consol. Rail Corp. v. Hyde Park.*,
   47 F.3d 473 (2d Cir. 1995)..................................................................................19

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. 2009) ...........................23, 24

*D'amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)..............................................................................8, 16

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)........................................................................8, 17, 18

*Dewey v. Volkswagen of Am.*,
   728 F. Supp. 2d 546 (D.N.J. 2010) .....................................................................24

*In re EVCI Career Colleges Holding Corp. Securities Litigation*,
   No. 05-cv-10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)..................18

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
   574 F.3d 29 (2d Cir. 2009)...................................................................................21

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
   Master File No. 02–CV–3400 (CM)(PED),
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........................................................17

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................11

*In re Groupon, Inc. Marketing and Sales Practice Litigation*,
   No. 11-md-2238-DMS, 2012 U.S. Dist. LEXIS 185750 (S.D. Cal. Sept. 28,
   2012) .....................................................................................................................11

*Henderson v. Volvo Cars of N. Am. LLC*,
   No. 09-4146, 2013 WL 1192479 (D.N.J. Mar. 22, 2013) ...............................11, 20, 21, 23, 25

*In re Holocaust Victim Assets Litigation*,
   105 F.Supp.2d 139 (E.D.N.Y. 2000) ................................................................7, 8

*In re Initial Public Offering Securities Litigation*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009).................................................................11

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009).................................................................................25

*Keller v. AXA Equitable Life Insurance Co.*,
   12-CV-4565, 2013 WL 6506259 (S.D.N.Y. December 2, 2013) .........................21

*Maley v. Del Global Technologies Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................................9

*Marisol. A. v. Giuliani*,
   126 F.3d 372 (2d. Cir. 1997)...............................................................................22

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................7

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972).................................................................................17

*In re Nissan Radiator/Transmission Cooler Litigation*,
   No. 10 CV 7493(VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013)....................11

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998)...................................................................................7

*In re PaineWebber Ltd. Partnerships Litigation*,
171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................17, 18

*Parker v. Time Warner Entertainment Co.*,
631 F. Supp. 2d 242 (E.D.N.Y. 2009) ...................................................................16

*Passafiume v. NRA Group, LLC*,
274 F.R.D. 424 (E.D.N.Y. 2010) .......................................................................21, 22

*Ritti v. U-Haul Int'l., Inc.*,
05-4182, 2006 WL 1117878 (E.D. Pa. Apr. 26, 2006)..........................................22

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)...................................................................................21

*Rodolico v. Unisys Corp.*,
199 F.R.D. 468 (E.D.N.Y. 2001) ...........................................................................24

*Shapiro v. JPMorgan Chase & Co.*,
11-8331, 2014 WL 1224666 (S.D.N.Y. 2014) ......................................8, 12, 14, 16

*In re Sinus Buster Products Consumer Litigation*,
No. 12-2429-ADS-AKT, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014)..............16

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011)..............................................................................23, 25

*Tardiff v. Knox County*,
365 F.3d 1 (1st Cir. 2004)......................................................................................25

*Thompson v. Metropolitan Life Insurance Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ...............................................................................8

*In re Top Tankers, Inc. Securities Litigation*,
No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ...........................7

*Torres v. Toback, Bernstein & Reiss LLP*,
No. CV-11-1368 NGG VVP, 2014 WL 988480 (E.D.N.Y. Mar. 14, 2014) .........19, 20, 21, 24

*Trombley v. National City Bank*,
826 F.Supp.2d 179 (D.D.C. 2011) .........................................................................11

*In re Veeco Instruments Inc. Securities Litig.*, No. 05 MDL 01695 (CM),
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)..........................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)............................................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)...........................................................................................7

*Weinberger v. Kendrick*,
  698 F.2d 61 (2nd Cir. 1982).......................................................................................7

*Willix v. Healthfirst, Inc.*,
  No. 07-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ......................................9

*Wright v. Stern*,
  553 F. Supp. 2d 337 (S.D.N.Y. 2008)......................................................................10

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ...............................................................19, 20, 21, 22, 23, 24, 25, 26

## I.    PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's June 24, 2015 order preliminarily approving the class action settlement, Plaintiffs Sarah Barrett, Marcus Ho, and Melanie Clark ("Plaintiffs") respectfully submit this Memorandum in support of their Unopposed Motion Seeking Entry of an Order for Final Approval of the Proposed Class Action Settlement, as memorialized in the Stipulation and Agreement of Settlement (the "Settlement Agreement" or "SA"),[1] filed June 15, 2015 and the Amendment to the Settlement Agreement, the Class Notice and the Claim Form, filed September 3, 2015 (the "Amendment") with Defendant Canon U.S.A., Inc. ("Defendant" or "Canon").  The record supports certification of the Settlement Class under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

This Court has previously directed that notice be provided in a reasonable manner to all class members who would be bound by the proposal. As discussed below, thousands of class members have submitted timely and valid claim forms, and stand to receive the benefits under the Settlement should it receive final approval by the Court. The objections and exclusions received to date have been nominal.  The Settlement Agreement meets the requirements of Rule 23(e) having been negotiated at arm's length and being fair, reasonable, and adequate.  Therefore, the Court should grant Plaintiffs' motion for final approval.  Canon does not oppose this request.

## II.    BACKGROUND AND PROCEDURAL HISTORY

The procedural history of this case is set forth in Plaintiffs' Memorandum of Law in Support of their Motion for Preliminary Approval of the Settlement, and is repeated herein only insofar as relevant to the instant motion. *See* ECF No. 33. This class action lawsuit was initially

---

[1]  The capitalized terms used in this Memorandum are defined in the Settlement Agreement. *See* Docket Entry No. 34-1.

commenced on May 23, 2014 by Plaintiff Sarah Barrett. ECF No. 1. By Stipulation and Order filed August 7, 2014, Plaintiff Barrett's case was consolidated with those of Plaintiffs Marcus Ho and Michael Robertson,[2] and the Court granted Plaintiffs' request to file a Consolidated Class Action Complaint and appointed William Federman of Federman & Sherwood and Benjamin Johns of Chimicles & Tikellis as Interim Co-Lead Counsel. ECF Nos. 18, 19.

The operative Consolidated Class Action Complaint (the "Complaint") was filed on September 15, 2014. ECF No. 22. It was brought by the three named Plaintiffs, who are among the thousands of purchasers of the allegedly defective Canon Printers.[3] The Complaint alleges that the Printers contain an undisclosed defect that manifests itself by displaying the "U052" coded error message – "The type of print head is incorrect. Install the correct print head." Compl. at ¶¶ 1, 10-11. According to the Complaint, when this error message appears, the Printer abruptly stops working and all printing functions are disabled, thereby limiting the useful life of the Printers. *Id.* Plaintiffs assert that Canon had actual knowledge of the claimed defect in the Printers, but failed to disclose such defect to consumers. Compl. at ¶¶ 13-15. Plaintiffs brought the Complaint on behalf of a nationwide class of purchasers of the Printers, and/or subclasses of purchasers in the States of New York, California and Virginia. Compl. at ¶ 26. Plaintiffs asserted causes of action for breach of express warranty, breach of the implied warranty of merchantability, and unjust

---

[2]  Michael Robertson was not included in the Consolidated Class Action Complaint and is not a Settlement Class Representative.

[3]  The Printers covered by the Settlement include units of the following Canon-brand PIXMA inkjet printer models: iP3600, iP4700, iP4820, iP4920, iX6520, iX7000, MG5120, MG5220, MG5320, MG6120, MG6220, MG8120, MG8220, MP500, MP530, MP560, MP600, MP610, MP620, MP640, MP730, MP800, MP960, MP970, MP990, MX700, MX712, MX850, MX860, MX870, MX882, MX892, MX7600, PRO9000MKII and PRO9500MKII, including all models that are derivatives of the models identified above and which are signified by a suffix following the model numbers set forth above.

enrichment, as well as for violations of the consumer protection laws of the subclass States. Compl. at ¶¶ 34-86.

On August 14, 2014, at Defendant's invitation, counsel for the parties participated in a lengthy in-person meet and confer about the direction of the case. During these discussions, the parties explored the background of the litigation, consumer complaints and possible early resolution of the case. Following that meeting, the parties engaged in extensive arm's length settlement negotiations and developed operative terms agreeable to both sides.

In June 2015, Plaintiffs and Defendant entered into a Stipulation and Agreement of Settlement which was intended to resolve the class action litigation. The Settlement Agreement together with the Exhibits thereto, and Plaintiffs' unopposed Motion for Preliminary Approval of Settlement and supporting Memorandum of Law, were filed with the Court on June 15, 2015. *See* ECF Nos. 32-34. On June 24, 2015, the Court granted the motion for preliminary approval of the proposed settlement. ECF No. 35. Subsequently, counsel for the parties and the Claims Administrator engaged in further discussions concerning the timing and content of the plan for providing notice to the Settlement Class and, subject to the Court's approval, agreed to amend the Settlement Agreement, the Class Notice and the Claim Form, as more fully set forth in the Amendment. On September 8, 2015 the Court granted the parties' request and issued an Order that, among other things, partially vacated and amended certain provisions of the June 24 Order and re-scheduled the final approval hearing for December 14, 2015. ECF No. 38. Thereafter, upon request of the parties and approval by the Court, the final approval hearing date was rescheduled

several times – most recently to the current date of April 25, 2016 at 10:00 a.m. *See* ECF Nos. 42, 45.

## A.     Terms of the Settlement Agreement

If approved, the settlement will provide substantial benefits to consumers nationwide who experienced a "Print Head Issue" with Printers that they purchased (i) in new condition from either Canon USA or an authorized Printer reseller, or (ii) in refurbished condition directly from Canon USA.[4] The valuable benefits made available pursuant to the settlement squarely address the issues raised in the litigation and provide very significant relief to the proposed Settlement Class members. Canon has agreed to provide the following relief to purchasers of the Printers who fill out valid claim forms:

•     **Extension of the Limited Warranty:** Canon has agreed to extend the warranty for the Printers by nine months from the expiration date of the original one-year warranty. The extended warranty shall be limited to the Print Head Issue, including the U052 error message issue addressed in the Complaint. Certain purchasers may be able to take advantage of the extended warranty beyond the effective date of the settlement without having to submit a claim form pursuant to the settlement if the Print Head Issue were to arise within the extended warranty period but subsequent to the effective date.

•     **Cash Payment/Store Voucher:**   After submission of an accepted claim, a purchaser shall be entitled to choose between (a) a cash payment of up to $50.00; or (b) a voucher valued at up to $75.00 redeemable at the Canon online store.[5] The vouchers shall be fully

_____

[4] The Settlement Class excludes Defendant and its directors, as well as any related entity.
[5] Purchasers of the Printers who contacted Canon for assistance with a Print Head Issue and received either a replacement print head or a replacement printer in response are not eligible to receive either a cash payment or a store voucher.

transferrable, and may be used to purchase any item offered for sale by Canon USA at the Canon online store. The settlement provides that the aggregate value of such cash payments and vouchers shall not exceed the amount of $930,000 (the "Settlement Fund").

**B.      Notification to Settlement Class Members**

In its June 24, 2015 Order Granting Preliminary Approval, the Court directed that notice of the proposed Settlement be disseminated to members of the Settlement Class in the manner provided for in the Order and pursuant to the Class Notice plan set forth in the Settlement Agreement. ECF No. 35, ¶ I.B.  Thereafter, pursuant to the Settlement Agreement, notice was properly given to Settlement Class members via email, postcard, *USA Today* print advertisement and statements on both Canon's and Class Counsel's websites.  Accordingly, Settlement Class members were given an opportunity to learn of their rights and evaluate the terms of the proposed settlement.  The Settlement Agreement provided that Settlement Class members be given sixty (60) days after the Notice Date within which to file Objections or Requests for Exclusion and seventy-two (72) days after the Notice Date to submit a Claim Form.  Each element of the approved Class Notice plan has been successfully implemented.

Angeion Group ("Angeion"), the Claims Administrator for the Settlement, sent over two million notices to prospective class members.  *See* Declaration of Troy Walitsky ("Walitsky Decl.") at ¶ 8 (submitted herewith as Exhibit A).  Angeion sent 1,581,895 emails containing the summary class notice to purchasers of the Printers for whom an email address had been provided to Angeion by Canon.  *Id.* Of the emails sent, there were 381,472 bounce-backs (approximately 24% of those sent) for which Angeion was also provided a physical address for the email recipients.  *Id.*  Angeion re-mailed the Summary Class Notice to 378,413 addresses after removing duplicate entries. *Id.*  In addition, Angeion mailed 50,725 postcards containing the Summary Class Notice to purchasers of the Printers for whom an email address had not been provided to Angeion

and for whom a physical address had been provided to Angeion. *Id.* at ¶ 5. 5,615 postcards were

returned as undeliverable and 542 were forwarded to an updated address. *Id.* at ¶ 6. The remaining

5,073 undeliverables were skip-traced, resulting in 4,338 updated addresses that were used for re-

mailing postcards containing the Summary Class Notice. *Id.*

**C.**     **Processing of Claim Forms and Results**

      The deadline by which Settlement Class members could object to or exclude themselves

from the settlement was November 24, 2015. Walitsky Decl. at ¶ 9. As discussed in more detail

below, only seven (7) individuals claiming to be class members filed objections, and two

hundred ninety (290) individuals elected to opt out. *Id.*

      Settlement Class members also had until December 7, 2015 to file a claim for a benefit

under the settlement. *See* Declaration of Erin P. Davenport ("Davenport Decl.") at ¶ 9 (submitted

herewith as Exhibit B). As discussed in the Davenport Decl., the Claims Administrator and

Canon's counsel engaged in discussions regarding the review and processing of the claim forms.

*Id.* at ¶¶ 10-11. This ultimately resulted in the parties jointly requesting (and the Court approving)

a protocol by which Canon's counsel would review the claim forms, with the oversight and

participation of Class Counsel. *Id.* at ¶¶ 12-14. This review process (described in detail at ¶¶ 20-

77 of the Davenport Decl.) resulted in 4,992 claims being approved. *See id.* at ¶¶ 78-79.

**D.**     **Release of Claims**

      Settlement Class members who do not timely exclude themselves from the settlement will

be bound by a release applicable to all claims arising out of or relating to the claims that were

asserted in the Complaint. The release will extend to Canon, and its related entities and persons,

from claims arising from, or in any way relating to, a Print Head Issue as defined in the Settlement

Agreement.  *See* SA at (1)(S). The settlement will also result in the dismissal of this action with prejudice.

## III.  ARGUMENT

### A.  The Settlement Should Be Finally Approved By the Court

The Second Circuit has long recognized the existence of a "strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig*., 147 F.3d 132, 138 (2d Cir. 1998)). Indeed, "class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Metlife Demutualization Litig*., 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010) (quoting *In re Top Tankers, Inc. Securities Litigation*, No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008)) (internal quotations omitted).  Taking into account both the process by which the settlement was reached and the substantive terms of the agreement, a settlement must be fair, reasonable, and adequate.  *In re Holocaust Victim Assets Litigation*, 105 F. Supp. 2d 139, 145 (E.D.N.Y. 2000). Considerations include experience of counsel, effectiveness and vigor with which the case was prosecuted, and the potential for collusion or coercion in settling. *Id.* at 146. In assessing the fairness of a settlement, both procedural and substantive factors are examined.  The procedural component of the fairness determination focuses on the "negotiating process by which the settlement was reached."  *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982)*.*

In this case, the settlement was reached after a series of arms-length negotiations.  Evidence and information obtained by Plaintiffs' counsel from documents provided by Canon and from an April 7, 2015 in-person confirmatory interview of a Canon representative confirm that the terms of the Settlement are fair, reasonable and adequate to the Class. After the Parties agreed to the

substantive relief for the Settlement Class – as set forth in the Settlement Agreement – the Parties

negotiated and agreed upon Plaintiffs' attorneys' fees and expenses of not more than $370,000.00.

Additionally, the Parties negotiated and agreed upon incentive awards for Plaintiffs of not more

than $250.00 per Plaintiff.

The substantive terms of a settlement agreement are evaluated by applying the "*Grinnell*

Factors*", as set forth in *Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974), which include: (1)

the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the

settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks

of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class

action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range

of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of

reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of

litigation. "All nine factors need not be satisfied, rather the Court should consider the totality of

these factors in light of the particular circumstances." *Thompson v. Metropolitan Life Insurance*

*Co*., 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'amato v. Deutsche Bank,* 236 F.3d 78, 86 (2d

Cir. 2001)). These factors are discussed below.

> **1.      The complexity, expense and likely duration**
> **of the litigation supports final approval**

"[T]he adequacy and reasonableness of the settlement must be measured against the

practical alternative to the settlement in the real world." *In re Holocaust Victim Assets Litig.,* 105

F. Supp. 2d at 148. The instant litigation would likely have been complex, expensive, and lengthy

in duration had a settlement not been reached. Several million consumers purchased the allegedly

defective Canon Printers. Here, as in *Shapiro v. JPMorgan Chase & Co.*, 11-8331, 2014 WL

1224666, at *8 (S.D.N.Y. Mar. 24, 2014), further litigation among the parties would have likely

entailed "extensive and contested motion practice, and, assuming the success of the Class Plaintiffs at each of these stages, a complex and costly trial, followed by likely appeals." *Id*. Defendant has already produced voluminous and comprehensive data to Plaintiffs. Had this action proceeded, significant further resources would have been expended analyzing additional discovery, obtaining testimony, preparing motions, and determining damages. The parties would have presented the Court with extensive motion practice related to both the merits and class certification, among other issues.

### 2. The reaction of the class to the settlement supports final approval

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Chavarria v. N.Y. Airport Serv., LLC,* 875 F. Supp. 2d 164, 173 (E.D.N.Y. 2012) (quoting *Maley v. Del Global Technologies Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002)) (internal quotation marks omitted). The deadline by which Settlement Class members could object to or exclude themselves from the settlement was November 24, 2015.[6] Only seven (7) people claiming to be class members filed objections, and 290 individuals timely elected to opt-out. When compared to the 2,011,033 notices[7] sent to potential Settlement Class members, the objections represent approximately 0.0003% of the potential Settlement Class, and the exclusions represent approximately 0.014%. This Court has noted that such a dearth of objections and exclusions is indicative of the fairness of the settlement, and provides further proof that the settlement should be approved. *See Willix v. Healthfirst, Inc.*, No. 07-1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only

---

[6] *See* Paragraph I(C) of the Amended Preliminary Approval Order (ECF No. 38).
[7] As noted above, 50,725 postcard notices and 1,581,895 email notices were sent to class members. A total of 378,413 postcard notices were sent to class members as a result of bounce-back notifications from previously sent email notices. Walitsky Decl. at ¶¶ 7-8.

7 of 2,025 class members submitted timely objections and only 2 requested exclusion). "The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness." *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out).

The seven objections that have been received do not provide any basis for the settlement not to receive final approval. In class action settlements, the notice and approval process generally solicits negative feedback regarding a settlement, because it is designed to solicit opt- outs and objections by advising class members of the procedures and deadlines for filing such responses with the Court. *See Charron v. Pinnacle Grp. NY LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012) ("A certain number of opt-outs and objections are to be expected in a class action, and in litigation involving a large class, such as that here, it would be extremely unusual not to encounter objections.") (internal quotation marks and citations omitted).

With respect to those objections made here, the Fernandes objection incorrectly states that in order to participate in the settlement, she is required to "use [the settlement relief] as a credit against a Canon purchase." As the Settlement Agreement makes clear, however, Settlement Class members can select a cash payment of up to $50.00 *or* a voucher valued at up to $75.00. SA § (b). Since it is possible to participate in the settlement without doing further business with Canon, this objection lacks a factual foundation.

Five of the objections state that the relief in the settlement is inadequate.[8] In sum, each of these objections essentially contends that the settlement consideration is not good enough – an

---

[8] The Fernandes objection states the "amount is inadequate," the Valunas objection states "the company [Canon] should replace the printers," the Roisman objection states that relief is "inadequate recompense," the Fox objection states the "printer should be replaced," and the Manfredi objection states Canon "will only have to pay $50.00."

argument that is routinely rejected in this context. *See, e.g.*, *In re Nissan Radiator/Transmission Cooler Litigation*, No. 10 CV 7493(VB), 2013 WL 4080946, at *12 (S.D.N.Y. May 30, 2013) ("Further, negotiating a cut-off at some point was necessary and is reasonable because settlement is the result of compromise and 'full compensation is not a prerequisite for a fair settlement.'") (quoting *Henderson v. Volvo Cars of N. Am. LLC*, No. 09-4146, 2013 WL 1192479, at *9 (D.N.J. Mar. 22, 2013))*; In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457 (S.D.N.Y. 2004) (approving settlement despite objectors' submissions stating "the settlement amount is too low"). Moreover, each of these objectors had the opportunity to opt-out of the settlement to pursue their claims had they wished to do so. *Charron*, 874 F. Supp. 2d at 209 ("Class Members who wished to pursue overcharge claims and who preferred to go for every last dollar, had ample opportunity to opt out of the Class; had they done so, they could have pursued treble damages."). The proposed settlement here provides a fund of up to $930,000 to compensate consumers for an alleged error code defect in a grouping of mostly inexpensive Canon Printers.

The Nathan and Mizuno objections only object to the documentation required to participate in the settlement. Requiring documentation to participate in a class action settlement, however, is not unusual and courts have approved settlements with similar requirements. *In re Initial Public Offering Securities Litigation*, 671 F. Supp. 2d 467, 489 (S.D.N.Y. 2009) (rejecting objections to settlement's documentation requirement). *See also In re  Groupon, Inc. Marketing and Sales Practice Litigation*, No. 11-md-2238-DMS, 2012 U.S. Dist. LEXIS 185750, at *22-23 (S.D. Cal. Sept. 28, 2012) (rejecting objection to proof-of-purchase requirement and stating "proof of purchase serves 'to ensure that money is fairly distributed for valid claims.'") (quoting *Trombley v. National City Bank*, 826 F. Supp. 2d 179, 201 (D.D.C. 2011)); *In re AOL Time Warner, Inc. Securities & ERISA Litigation*, No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236, at *17

n.22 (S.D.N.Y. Apr. 6, 2006) (rejecting objector's substantive argument because objector did not submit proper proof of purchase and thus was not a class member). Such requirements are instituted to reduce the number of fraudulent claims and to ensure that the person filing a claim is actually a class member. *Id.* Significantly, this settlement provides that Settlement Class members are excused from providing documentation evidencing their purchase of a Printer if Canon has a record that it was registered with the company at the time of purchase (or in any event, prior to February 18, 2015, the date of the Term Sheet executed by counsel for the Parties). SA § 6(G). Finally, the fact that 4,992 Settlement Class members were deemed to have submitted valid claims with sufficient documentation shows that these requirements were not unduly burdensome here. *See* Davenport Decl. ¶¶ 78-79.

> **3.    The stage of the proceedings and the amount of discovery completed supports final approval**

Courts consider the stage of the proceedings and amount of discovery completed "to ensure that plaintiffs had access to sufficient information to evaluate their case properly and to assess the adequacy of any settlement proposal." *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM), 2014 WL 1224666, at *9 (S.D.N.Y. Mar. 24, 2014). As noted above, this class action lawsuit was initially commenced on May 23, 2014, when the original complaint was filed by Plaintiff Sarah Barrett. ECF No. 1. The case was filed after an extensive pre-suit investigation by Plaintiffs' counsel. This investigation included interviews with putative class members, reviewing their documentary material, researching publicly available information about the alleged defects in the Canon Printers and print heads, identifying and interviewing expert witnesses, including a printer technology expert, and inspecting certain of the affected Printers with the assistance of said printer

technology expert. Thereafter, the operative Consolidated Class Action Complaint (the "Complaint") was filed on September 15, 2014. ECF No. 22.

On August 14, 2014, counsel for the Parties and representatives of Canon participated in a lengthy in-person meet and confer about the direction of the case and necessary discovery. During these discussions, the parties explored the background of the litigation, the various consumer complaints, and the possible early resolution of the case. As part of these negotiations, Plaintiffs requested and Canon voluntarily produced voluminous and comprehensive data regarding the Printers and the allegations in the Complaint. Plaintiffs' counsel, with the assistance of an expert, then reviewed and analyzed the data produced by Canon. In addition, Plaintiffs conducted an in-person interview of a Canon employee to review the voluminous data produced by Canon and to both understand the contours of the data and to ensure its accuracy. The review of data produced by Canon and the interview confirmed that settlement of this Action was in the best interests of Plaintiffs and the proposed Settlement Class.

Plaintiffs' counsel also performed a significant amount of work over the course of the notice and claims administration process. This included overseeing the claim form review, addressing questions and concerns of Settlement Class members, and, where appropriate, obtaining re-consideration and re-classification of claims that were initially denied based upon

missing information or documents. As of the end of March 2016, Class Counsel's updated time and expenses are set forth on the following page:[9]

| FIRM | LODESTAR | EXPENSES |
|------|----------|----------|
| Federman & Sherwood | $342,143.30 | $19,304.87 |
| Chimicles & Tikellis LLP | $298,633.75 | $5,366.52 |
| Harwood Feffer LLP | $24,285.00 | $450.51 |
| **TOTALS** | **$665,062.05** | **$25,121.90** |

4.      **The risks of establishing liability support final approval**

This litigation exemplifies the long-established understanding that "complex class actions are difficult to litigate," as "[t]he legal and factual issues involved are always numerous and uncertain in outcome." *Shapiro*, 2014 WL 1224666, at *10. This Action involves numerous disputed questions of law, including violations of state consumer protection statutes, breach of implied warranty, breach of express warranty, and unjust enrichment and restitution claims. Additionally, the very nature of the alleged misconduct is inherently complex and highly technical. A great deal of expert analysis and testimony would be inevitable should the Action proceed to trial. Furthermore, Canon's legal defenses, as set forth in its October 6, 2014 letter requesting a pre-motion conference in connection with its proposed motions to dismiss the Complaint and strike the class allegations from the Complaint could have jeopardized any possibility of a class recovery. ECF No. 23. The complexity of the questions of law, the difficulty of proving the alleged misconduct presented in this case, as well as the anticipated motions by Canon's counsel, created

---

[9] This does not include time and expenses already incurred in April, time and expenses associated with the April 25 final approval hearing, or additional time and expenses that may be required in the future to assist with the administration of the settlement.

a genuine risk in establishing liability, and therefore support this Court granting final approval of the settlement.

### 5.   The risks of establishing damages support final approval

As previously stated, this Action involves several million potential class members, multiple disputed questions of law, and highly technical alleged misconduct.  In reaching the Settlement Agreement, Plaintiffs' counsel has devoted a great deal of time to fairly determining damages and resulting relief for Settlement Class members. Under the terms of the Agreement, Canon will offer Settlement Class members their choice of either (a) a cash payment of up to $50.00, or (b) a voucher valued at up to $75.00 at the online Canon store.  For many Settlement Class members this amount will be a substantial portion of their actual cost of the Printers they purchased. However, for trial purposes and assuming *arguendo* the absence of the Settlement Agreement, it would require both substantial resources and time to determine the appropriate measure of damages.  Canon would likely secure its own rebuttal expert witnesses and the existence and amount of damages would ultimately turn on the "battle of the experts."  *See, e.g.*, *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) (final approval was warranted where, *inter alia*, "the damage assessments of Plaintiffs' and Defendants' experts who would be called at trial were sure to vary substantially, thus precipitating a 'battle of the experts'" raising the possibility that "a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses").  Thus, Plaintiffs faced a significant risk that the damages that now form the basis for the Settlement Class' recoveries through this settlement could never be proven at trial, or would be greatly offset.

### 6. The risks of maintaining the class action through trial or appeal supports final approval

The risks of maintaining this litigation as a class action through trial and any appeals also support final approval of the Settlement Agreement. As previously stated, Canon indicated in an October 6, 2014 letter to the Court that it anticipated filing both a motion to dismiss and a motion to strike the class allegations from the Complaint. Had the Settlement Agreement not been consummated and this litigation had proceeded, there was thus a further risk that the Court could have granted portions of the motion to dismiss and motion to strike and, if the case proceeded to class certification, a genuine risk that the Class would not have been certified. Moreover, if a class is certified, the risk of decertification is possible, especially where the Court could be expected to continue to assess the manageability of a trial involving the laws of at least several states. *See In re Sinus Buster Products Consumer Litigation*, No. 12-2429-ADS-AKT, 2014 WL 5819921, at *10 (E.D.N.Y. Nov. 10, 2014) ("Were the Court to reject the settlement, the parties would likely contest certification, which would present a possibility of decertification. A settlement therefore avoids the risk of decertification and thus weighs in favor of approval."). The settlement, then, "permits the parties to ensure that class status will not be lost." *Shapiro*, 2014 WL 1224666, at *11.

### 7. The ability of defendants to withstand greater judgment

Although Canon may have been able to pay a judgment in excess of the settlement amount, a defendant's "ability to withstand a higher judgment standing alone, does not suggest that the settlement is unfair." *D'Amato*, 236 F.3d at 86. *See also Parker v. Time Warner Entertainment Co.*, 631 F. Supp. 2d 242, 261 (E.D.N.Y. 2009) ("The fact that a defendant is able to pay more [than] it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate."); *In re AOL Time Warner, Inc. Securities & ERISA Litigation*, No. MDL 1500, 02

Civ. 5575 (SWK), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair").

The fact that Canon may have the ability to pay a greater judgment is outweighed here by the other factors strongly favoring the settlement, most notably, the risks to the Settlement Class of establishing liability and damages and maintaining class certification, and the reasonableness of the settlement amount in light of those risks.

### 8. The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation both support final approval of the settlement

The last two substantive factors that courts consider are the range of reasonableness of the settlement fund in light of (i) the best possible recovery and (ii) litigation risks. In analyzing these two factors, the issue for the Court is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case. Thus, courts consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable. *Grinnell*, 495 F.2d at 462. Courts agree that the determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. Partnerships Litigation*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997) (internal citation and quotations omitted). The fact that a proposed settlement "may only amount to a fraction of the potential recovery" does not necessarily suggest that settlement is inadequate. *Grinnell*, 495 F.2d at 455. Instead, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). *See also In re Flag Telecom Holdings, Ltd. Securities Litigation*, Master File No. 02–CV–3400 (CM)(PED), 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010).

The settlement here is well within the range of reasonableness in light of the substantial risks presented by this litigation. This case asserted claims on behalf of purchasers of Canon Printers with an alleged single, unique defect error code issue common to all of the subject Printers. Prior to commencement of this Action, Interim Co-Lead Counsel engaged an expert to assist counsel in both understanding the technicalities concerning the error code issue, as well as estimating potentially recoverable damages. As discussed above, Canon denied that there was any defect in the Printers that was causing the error code. The proposed settlement here provides a fund of up to $930,000 in compensation for Settlement Class members.

While Plaintiffs, because of the highly unique nature of the claims at issue here, cannot provide the Court with comparable settlements in similar cases, Plaintiffs' counsel have concluded that, in light of the above-stated risks and the risks of litigation generally, the settlement, which provides an immediate and substantial benefit to Settlement Class members, outweighs the benefits of continued litigation. "Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Securities Litigation*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). *See also Clark v. Ecolab Inc*., No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) ("The Court gives weight to the parties' judgment that the settlement is fair and reasonable."). Moreover, Co-Lead Counsel in this action were intimately familiar with the facts in the case and have extensive experience prosecuting consumer class actions. In these circumstances, Co-Lead Counsel's opinion that settlement is reasonable is entitled to "great weight." *PaineWebber*, 171 F.R.D. at 125. *See also In re Veeco Instruments Inc. Securities Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *12 (S.D.N.Y. Nov. 7, 2007). In sum, a review of the *Grinnell* factors, including the range of reasonableness of the settlement fund in light of the

best possible recovery and the attendant litigation risks, strongly supports a finding that the settlement is fair, reasonable and adequate.[10]

## B.     Final Certification of the Class for Purposes of Settlement Only is Appropriate

On June 24, 2015, this Court's Preliminary Approval Order conditionally certified a settlement class in this Action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. ECF No. 35.  The Court should now formally grant class certification for settlement purposes only.

The Settlement Agreement proposes to give Settlement Class members prompt and certain relief – via their choice of a cash payment or voucher. This relief is particularly valuable given the litigation risks presented by this case, as set forth above.  Under the circumstances, the Settlement is plainly fair, reasonable, and adequate for Plaintiffs and the Settlement Class members.

### 1.     Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  "In the Second Circuit, numerosity is presumed if the putative class consists of more than 40 individuals." *Torres v. Toback, Bernstein & Reiss LLP*, No. CV-11-1368 NGG VVP, 2014 WL 988480, at *4 (E.D.N.Y. Mar. 14, 2014) (citing *Consol. Rail Corp. v. Hyde Park*., 47 F.3d 473, 482-83 (2d Cir. 1995)). Here, over a million Printers were sold. Numerosity is therefore easily satisfied.

---

[10] Moreover, following conclusion of negotiations on the operative terms of the settlement, the parties negotiated, at arm's length, the issue of Plaintiffs' counsel's attorney's fees and expenses and the incentive awards to Plaintiffs. Canon has agreed not to oppose Plaintiffs' counsel's applications for attorney's fees and expenses in an aggregate amount of not more than $370,000.00. Canon also has agreed not to oppose incentive awards for each of the three named Plaintiffs in an amount of no more than $250.00 per Plaintiff.

## 2.    Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).  The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (U.S. 2011).  Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.  This Court has described the commonality threshold as a "low bar." *Torres*, 2014 WL 988480, at *4.

In this case, there are a multitude of common questions of law and fact, such as whether the Printers suffer from a uniform design defect creating the common error code, whether Canon had a duty to disclose this alleged defect to consumers, whether Canon failed to disclose the alleged defect to consumers, and whether Plaintiffs have actionable claims.  Commonality is, therefore, satisfied.  *See Henderson v. Volvo Cars of North America, LLC*, No. 09-4146 (CCC), 2013 WL 1192479, at *12-13 (D.N.J. Mar. 22, 2013) ("Several common questions of law and fact exist in this case, including whether the transmissions in the Class Vehicles suffered from a design defect, whether Volvo had a duty to disclose the alleged defect, whether the warranty limitations on Class Vehicles are unconscionable or otherwise unenforceable, and whether Plaintiffs have actionable claims."); *Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941, 2014 WL 3605507, at *3 (E.D.N.Y. June 25, 2014) ("Class certification is appropriate because plaintiffs have alleged that 11,000

Settlement Class Members suffered a common injury, stemming from Domino's purportedly uniform employment policies and practices.").

3. **Typicality Under Rule 23(a)(3)**

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. FED. R. CIV. P. 23(a)(3). "[T]ypicality does not require that the representatives' claims be identical to those of the class members." *Torres*, 2014 WL 988480, at *6 (quoting *Keller v. AXA Equitable Life Insurance Co.,* 12-CV-4565, 2013 WL 6506259, at *4 (S.D.N.Y. Dec. 2, 2013)) (internal quotations omitted). "Rather, the representative plaintiff must simply show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (quoting *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 35 (2d Cir. 2009)) (internal quotations omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims." *Passafiume v. NRA Group, LLC,* 274 F.R.D. 424, 429 (E.D.N.Y. 2010) (quoting *Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993)). Here, all of Plaintiffs' claims arise out of the same alleged conduct by Canon related to its design, manufacture, and sale of the allegedly defective Printers (and its alleged failure to disclose the alleged defect). *See Henderson*, 2013 WL 1192479, at *5 (typicality satisfied where "the claims made by the named Plaintiffs and those made on behalf of Settlement Class Members arise out of the same alleged conduct by Volvo - namely, Volvo's design, manufacture and sale of the allegedly defective Class Vehicles and Volvo's alleged failure to disclose the defect."). This requirement is, likewise, met here.

### 4. Adequacy of Representation Under Rule 23(a)(4)

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires a plaintiff to demonstrate two elements "(1) there is no conflict of interest between the named plaintiffs and other members of the plaintiff class and (2) class counsel is qualified, experienced, and generally able to conduct the litigation." *Passafiume*, 274 F.R.D. at 429 (quoting *Marisol. A. v. Giuliani*, 126 F.3d 372, 378 (2d. Cir. 1997)) (internal quotations omitted).

In addressing the adequacy of the proposed class representative, district courts examine whether he or she "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 WL 1117878, at *5 (E.D. Pa. Apr. 26, 2006) (internal citations omitted). Here, all of the Plaintiff Class Representatives are adequate because they each purchased one of the Printers subject to the Settlement Agreement and were injured in the same manner based on the same alleged defect. They have also each actively participated in the litigation of this case and have been in regular communication with their attorneys regarding the status of the case.

With respect to the adequacy of Co-Lead Counsel, they have invested considerable time and resources in the prosecution of this Action. The Court previously appointed the law firms of Federman & Sherwood ("F&S") and Chimicles & Tikellis ("C&T") as Co-Lead Counsel on August 14, 2014. *See* ECF No. 19. Class Counsel have a wealth of experience in litigating complex class action lawsuits and were able to negotiate an outstanding settlement for the Class in this case. Indeed, in approving a class action settlement in another case brought by C&T and others involving allegedly defective transmissions in certain Volvo vehicles, Judge Cecchi remarked that the firm has "extensive experience litigating complex class actions and obtaining class action settlements…

[and therefore] the Court finds that Class Counsel has the qualifications, experience, and ability to conduct the litigation [pursuant to Fed. R. Civ. P. 23(a) and (g)]." *Henderson*, 2013 WL 1192479, at *6-7.

5.    **The Requirements of Rule 23(b)(3) Are Met**

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(3), which has two components: predominance and superiority. *See* FED. R. CIV. P. 23(b)(3). "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *1-2 (W.D. Ky. Dec. 22, 2009) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996)) (internal quotations omitted). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

With respect to predominance, courts have stated that the focus of the "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 298 (3d Cir. 2011) (en banc). "To determine whether common issues predominate over questions affecting only individual members, the Court must look at each claim upon which the plaintiffs seek recovery … determine whether generalized evidence exists to prove the elements

of the plaintiffs' claims on a simultaneous, class-wide basis, or whether proof will be overwhelmed by individual issues." *Dewey v. Volkswagen of Am.,* 728 F. Supp. 2d 546, 568 (D.N.J. 2010).

"Class actions are the superior method for resolving controversies when the main objects of Rule 23 are served, namely the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *Rodolico v. Unisys Corp*., 199 F.R.D. 468, 479-80 (E.D.N.Y. 2001). "Class actions are also often the superior form of adjudication when the remedies available to the individual class members are so small that members would lack incentives to proceed individually." *Torres*, 2014 WL 988480, at *9 (internal citations omitted).

Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Id.* (quoting FED. R. CIV. P. 23(b)(3)).

Here, for settlement purposes, there are several common questions of law and fact that predominate over any questions that may affect individual Class members. For example, were this case to proceed, the primary issue would be whether Canon is liable for allegedly distributing Printers with a design defect that causes premature failure and its alleged failure to disclose it. This is an issue subject to "generalized proof," and is a "question that is common to all class members." *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., 2009 WL 5184352, at *6 ("the proof required [must focus] on Defendant's conduct, not on the conduct of

individual class members."). *Accord, Sullivan*, 667 F.3d at 299; *Henderson*, 2013 WL 1192479, at *6-7. So too here. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied for settlement purposes. *See* FED. R. CIV. P. 23(b)(3). The Settlement Agreement provides members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class members who are dissatisfied with the settlement to object to it or to exclude themselves. The settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Canon by resolving the case as a class action. And because the Parties seek to resolve this case through a settlement, any manageability issues that could have arisen at trial are marginalized. *Sullivan*, 667 F.3d at 302-03; *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009).

Finally, the Parties are not aware of any other pending lawsuit—class action or otherwise—brought by a Settlement Class member for the same alleged defect in the same Printers subject to this settlement. Therefore, "class status here is not only the superior means, but probably the only feasible [way]…to establish liability and perhaps damages." *Augustin v. Jablonsky,* 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)).

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied for settlement purposes, certification of the proposed Settlement Class is appropriate.

# IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order: (1) formally certifying this case as a class action pursuant to FED. R. CIV. P. 23(a) and 23(b)(3) for the purpose of effectuating a class action settlement of the claims against the Defendant; (2) finally approving the settlement. A proposed order granting this relief is submitted with this memorandum.

Dated: April 11, 2016

Respectfully submitted,

By: /s/ William B. Federman
    William B. Federman
    FEDERMAN & SHERWOOD
    10205 N. Pennsylvania Avenue
    Oklahoma City, OK 73120
    Telephone: (405) 235-1560
    Facsimile: (405) 239-2112
    Email: WBF@federmanlaw.com

    Benjamin F. Johns
    CHIMICLES & TIKELLIS LLP
    One Haverford Centre
    361 West Lancaster Avenue
    Haverford, PA 19041
    Telephone: (610) 642-8500
    Facsimile: (610) 649-3633
    Email: BFJ@chimicles.com

    *Interim Co-Lead Counsel for Plaintiffs*

    Robert Ira Harwood
    HARWOOD FEFFER LLP
    488 Madison Avenue
    New York, NY 10022
    (212) 935-7400
    Fax: 212-753-3630
    Email: rharwood@hfesq.com

    *Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I, William Federman, certify that I caused the foregoing to be electronically filed in this case on April 11, 2016 using the Court's CM/ECF System, thereby serving it upon all counsel of record in this case.

/s/ William B. Federman
William B. Federman